IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DONALD R. GREGER,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>　　　　　　　Defendant. | 8:18CV577<br><br>MEMORANDUM AND ORDER |

　　　This matter is before the Court on defendant Union Pacific Railroad Company's ("U.P." or "the Railroad") motion for summary judgment, Filing No. 14. This is an action for damages under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, alleging workplace exposure to toxic substances and carcinogens caused the plaintiff's renal and adrenal cancer.

　　　The defendant contends that the plaintiff's action, filed on December 13, 2018, is time-barred as a matter of law because undisputed evidence shows that the action was filed more than three years after he was diagnosed with renal cancer on June 10, 2010, when his claim accrued.

　　　The plaintiff argues that there are genuine issues of material fact as to when the he knew or should have known his exposures to diesel exhaust and other carcinogens caused or contributed to his kidney cancer.

I.　　BACKGROUND

　　　The following facts are gleaned from the parties' respective statements of undisputed facts. Filing No. 15, Defendant's Brief at 2-4; Filing No. 18, Plaintiff's Brief at 1-2; Filing No. 20, Defendant's Reply Brief at 2-3. The parties agree the plaintiff was

1

employed by Union Pacific, or its predecessor in interest, from 1955 to 2001. He worked as a clerk, a brakeman and a conductor and alleges he was exposed to toxic substances including diesel fuel, diesel fumes and exhaust, benzene, creosote, and asbestos.

Greger claims he was exposed to environmental conditions every day he worked. Plaintiff testified locomotive engines put out a lot of smoke and that he was exposed to diesel fumes in the locomotive cab and on the ground where he worked. The diesel fumes "gagged" him, were "suffocating," made it hard to breathe, and caused headaches. Plaintiff encountered diesel exhaust that caused headaches and made it difficult to breathe his whole career. Plaintiff felt at the time he was breathing diesel exhaust that it was not good for him. Plaintiff complained about stopping in tunnels on running locomotives because there was twice as much exhaust, which he felt was harmful to him.

Plaintiff smelled the contents of tank cars and saw placards on the cars with crossbones, so he knew they contained "bad stuff." When he encountered a leaking car he reported it and got away because he knew it was harmful. Plaintiff claims he was exposed to creosote walking on railroad ties. The ties smelled and he knew the creosote was harmful because it burned if you got it on your skin.

Plaintiff testified he inhaled smoke from brake shoes during every trip he worked on cabooses, which he felt was not good for him. He claims brake shoes on cabooses contained asbestos and he breathed asbestos in the smoke from the brake shoes.

On June 30, 2010, plaintiff was diagnosed with renal cancer and discussed it with his doctor. His doctor recommended surgery and plaintiff underwent the same. Plaintiff

felt at the time he was diagnosed with cancer in 2010 that his sickness could have been due to his work at the Railroad:

> Q. You had told your attorney that when you were diagnosed with cancer back in 2010, that you felt that your sickness could have been due to the Railroad because that was the only job you ever had, right?
>
> A. Yes.

Filing No. 19-1, Ex. 2, Deposition of Donald Greger ("Greger Dep.") at 137-38.

Plaintiff spoke with his physician David Graham, M.D., at the Carle Cancer Center Division of Hematology/Oncology on November 8, 2010, about possible causes of his cancer. During that conversation plaintiff denied having exposures to defoliants or Agent Orange from the time he served in the military in Korea.

Plaintiff's renal cancer metastasized and spread to his adrenal gland by November 26, 2012. Plaintiff asked his urologist and his oncologist what caused his kidney cancer and they both stated that they did not know. Plaintiff saw a television commercial from the Bern Cappelli law firm advertising about railroad cancer, called the phone number, and filed this lawsuit. He filed this lawsuit as a result of his renal cancer diagnosed on June 30, 2010.

Additionally, the Court's review of the record shows that although Greger testified that he knew inhaling diesel fumes was not good for him, he did not believe it caused cancer. *Id.* at 136. He also testified that the ill health effects of breathing diesel exhaust would not last long. *Id.* at 40. He stated that he did not feel the smoke was harmful, he just did not like the smell. *Id.* at 62. The skull and crossbones signs that he had seen were on tank cars. *Id.* at 46. He stated he smelled them sometimes when he was working in the yard. *Id.* at 46-47. Further, he stated that he only encountered leaking or venting tank cars that had noxious fumes three to four times in his career. *Id.* at 47-48.

He also testified he did not recall having seen any decal labelled "California Proposition 65 Warning," stating "diesel engine exhaust and some of its constituents are known to the State of California to cause cancer, birth defects, and other reproductive harm" in a locomotive, nor did he remember any discussions or training about diesel exhaust and harmful effects. *Id.* at 65-68. When shown his human resources records indicating he had received certain training, including "Transformation Training" in 1999, Greger acknowledged that he may have had the training, but did not recall it. *Id.* at 74-76. Also, Greger testified that although he knew that creosote caused skin burns, he did not realize it could cause cancer. *Id.* at 137. Though at one point, Greger testified that he knew since the 1990s that asbestos caused cancer, he later stated that he did not know that asbestos in the brake shoes, or fumes from the asbestos, could cause cancer. *Id.* at 139.

Further, he stated that neither he nor his wife have any medical training. *Id.* at 131. He testified that he asked two of his doctors, a urologist and an oncologist, what had caused his cancer and they told him they did not know. *Id.* at 128-129.

II.   LAW

The statute of limitations for FELA actions is three years from the day the cause of action accrued. 45 U.S.C. § 56. Where a claimant has no reason to know of his injury when it is sustained, his cause of action under the FELA does not accrue, and limitations therefore does not begin to run, until the claimant becomes aware that he has been injured *and* that his injury is work related. *Urie v. Thompson*, 337 U.S. 163, 169 (1949) (emphasis added). When the injury is not a single traumatic one with immediate symptoms, but rather a latent one with symptoms appearing over time, 'the

4

cause of action does not accrue until the employee is aware or should be aware of his condition.'" White v. Union Pac. R.R. Co., 867 F.3d 997, 1001 (8th Cir. 2017) (quoting Fletcher v. Union Pac. R.R. Co., 621 F.2d 902, 906 (8th Cir. 1980)). In a case involving exposure to a toxin, "'inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time . . . the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves[.]'" Urie, 337 U.S. at 170 (quoting Associated Indem. Corp. v. Industrial Accident Comm'n, 12 P.2d 1075, 1076 (Cal. Dist. Ct. App. 1932)). Generally, a plaintiff will know he has been injured "when his condition is diagnosed, unless it is shown that the plaintiff 'should have known' at an earlier date that he was injured." Young v. Clinchfield R.R. Co., 288 F.2d 499, 503 (4th Cir. 1961).

The employee must also know, or have reason to know, the condition's cause. White, 867 F.3d at 1001; see also Mix v. Del. & Hudson Ry. Co., 345 F.3d 82, 90 (2d Cir. 2003); Campbell v. Grand Trunk W.R.R. Co., 238 F.3d 772, 775 (6th Cir. 2001); Albert v. Maine Cent. R. Co., 905 F.2d 541, 544 (1st Cir. 1990); Townley v. Norfolk & W. Ry. Co., 887 F.2d 498, 500 (4th Cir. 1989); Kichline v. Consol. Rail Corp., 800 F.2d 356, 360 (3d Cir. 1986); DuBose v. Kansas City S. Ry. Co., 729 F.2d 1026, 1030 (5th Cir. 1984) (all holding that the statute of limitations begins to run when the employee becomes aware not only of his disease but also of its cause). "Any plaintiff who is blamelessly ignorant of existence or cause of his injury shall be accorded the benefits of the discovery rule." Stoleson v. United States, 629 F.2d 1265, 1269 (7th Cir. 1980) (involving an FTCA applying the same discovery rule). The discovery rule is applied in federal question cases whenever a plaintiff is not aware of and has no reasonable

5

opportunity to discover the critical facts with respect to his injury and its cause. *Townley*, 887 F.2d at 501.

When a plaintiff discovers or, in the exercise of reasonable diligence, should discover the "critical facts" of injury and cause, the statute then begins to run— "accrual" of a claim need not "await awareness by the plaintiff that his injury was negligently inflicted." *United States v. Kubrick*, 444 U.S. 111, 123 (1979); *see also White*, 867 F.3d at 1002-03 (stating that once a condition manifests itself, the question becomes whether the plaintiff knew or, through the exercise of reasonable diligence, should have known of the cause of his injury). A claim accrues when one reasonably should know that his symptoms are fairly attributable to a workplace injury. *White*, 867 F.3d at 1003. This rule imposes on injured plaintiffs an affirmative duty to investigate the potential cause of a known injury. *Tolston v. Nat'l R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir. 1996).

Both knowledge of the injury and of its governing cause require an objective inquiry into when a claimant knew or should have known, in the exercise of reasonable diligence, the "'essential facts of injury and cause.'" *White*, 867 F.3d at 1001 (quoting *Fries v. Chi. & Nw. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990)). All that is required is that the plaintiff know or have reason to know of a potential cause—actual knowledge of causation is not necessary to a finding that a cause of action has accrued. *Fries*, 909 F.2d at 1096. A plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury "can protect himself by seeking advice in the medical and legal community." *Kubrick*, 444 U.S. at 123.

6

"When a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury." *Dubose*, 729 F.2d at 1031 (discussing constructive knowledge). A two-part analysis governs whether a plaintiff reasonably should have known of his or her claim. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1151–52 (9th Cir. 2002). The goal of the analysis is to evaluate when a reasonable person would have connected his or her symptoms to their alleged cause. *Id.* at 1152. The first consideration is whether a reasonable person in the plaintiffs' situation would have been expected to inquire about the cause of his or her injury in the first place. *Id.* at 1150 (referring to inquiry notice and "whether a reasonable person would have inquired about the cause of his injury in light of public knowledge and publicity). "Particularly when a plaintiff has cancer, the answer to [the question whether a plaintiff could reasonably have been expected to make an inquiry] may depend on whether there are a number of potential causes." *Id.* Because "'there are many suspected causes of cancer, including those that are natural or non-negligent and would not give rise to a legal cause of action,'" a plaintiff, "on learning that he has cancer, lacks the usual incentive to investigate the possibility that the known injury may give rise to a legal claim.'" *Id.* (quoting *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1385 (10th Cir. 1985); *cf. Fries,* 909 F.2d at 1096 (rejecting "the idea that when a plaintiff suspects several causes, the cause of action does not accrue until the governing, or even most probable, cause is known").

7

If the facts indicate a plaintiff is on inquiry notice, the second consideration is "whether [an inquiry] would have disclosed the nature and cause of plaintiff's injury so as to put him on notice of his claim." Id.; see also Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1389 (10th Cir. 1985) (finding a genuine issue of material fact on the question of when the plaintiffs knew or should have known of the facts constituting their cause of action and stating that a cumulation of public information linking radiation and leukemia insufficient as a matter of law to put a reasonably diligent plaintiff on notice to investigate, where the plaintiffs had asked their doctors what had caused the leukemia and were told that the cause was unknown). This second step "focuses on whether, if the Plaintiffs had inquired about the cause of their illnesses, the result of that inquiry would have provided Plaintiffs with knowledge of the connection between the injury and its cause." O'Connor, 311 F.3d at 1155-56.

Subjective suspicion that an illness was work-related is not necessarily enough to trigger accrual of a limitations period. Stoleson, 629 F.2d at 1267. Fixing the time of accrual at the time of a plaintiff's suspicion when medical science did not at that time recognize the causal connection, "would provide [plaintiff] with nothing more than a delusive remedy." Id.; see also Bayless v. United States, 767 F.3d 958, 967-68 (10th Cir. 2014) (finding that, despite her suspicions over sixteen years, a claimant suffering from a mysterious debilitating illness did not know, or have reason to know, that her illness was caused by exposure to nerve gas until she received results of a test that caused her doctor to diagnose her with toxic encephalopathy from exposure to toxins in the workplace); see also Rosales v. United States, 824 F.2d 799, 805 (9th Cir.1987) ("Ordinarily, a plaintiff cannot be expected to discover the general medical cause of his

8

injury even before the doctors themselves are able to do so."); Nicolazzo v. United States, 786 F.2d 454, 456 (1st Cir. 1986) ("It was only when [the plaintiff] received a correct diagnosis . . . that the factual predicate of his injury . . . became known to him."); Osborn v. United States, 918 F.2d 724, 733 (8th Cir. 1990) (rejecting the government's argument that the plaintiff's mother should have known the cause of plaintiff's seizure "when the doctors, including specialists . . . had not yet reached a conclusion"); Harrison v. United States, 708 F.2d 1023, 1028 (5th Cir. 1983) (statute tolled because "[i]t would be unreasonable to hold [a plaintiff] to a higher degree of medical competence and understanding than the many medical experts she consulted."). Thus, there is a legal distinction between one's own suspicion that something is a cause and the requisite objective knowledge that begins the accrual clock. See Bayless, 767 F.3d at 967. While in some circumstances a lay person's suspicion might be sufficient to trigger the statute, it cannot do so when a plaintiff confronts "demonstrable evidence debunking her own suspicions." Id. at 969-70. Nonetheless, "compelling" or "certain" proof of a cause is not a requirement before accrual may begin, nor does a plaintiff in every case need medical or scientific confirmation of a cause before the statute of limitation begins. Id.; see, e.g., Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998); Nemmers v. United States, 795 F.2d 628, 631 (7th Cir. 1986). Whether there exists a "medically recognized and documented causal link between the employee's symptoms and his working conditions," is one factor to consider. Stoleson, 629 F.2d at 1267.

Application of the discovery rule involves determining what the plaintiff knew or should have known, which is a factual question that is appropriate for the trier of fact. Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010); see also Genereux v.

9

*Am. Beryllia Corp.*, 577 F.3d 360, 360 (1st Cir. 2009) (stating that determining when a plaintiff had notice of the likely cause of an injury is an example of such a factual determination); *Green v. CSX Transp., Inc.*, 414 F.3d 758, 764 (7th Cir. 2005) (finding a fact question on whether the plaintiff's intermittent pain in her shoulder would have been sufficient to put a reasonable person on notice that she had suffered a cognizable work-related injury); *Smith v. States Marine Int'l, Inc.*, 864 F.2d 410, 412 (5th Cir. 1989) (finding an issue of fact on whether the plaintiff should have appreciated that his hearing loss was attributable to long-term exposure to loud noises).

III.  DISCUSSION

The Court finds that the defendant has not shown that it is entitled to a summary judgment of dismissal based on the statute of limitations. The evidence presently before the Court does not show conclusively that the plaintiff was aware of the critical fact that his work on the railroad could have caused his renal (and subsequently adrenal) cancer during the time between his diagnosis in 2010 and the limitations date of December 13, 2015, so as to be barred by the statute of limitations. His deposition testimony is equivocal and/or contradictory at best and establishes only that he knew some aspects of his work over forty-six years may have been bad for his health. That is different than having knowledge of the fact that exposures at work caused his cancer.[1] The defendant has not shown that Greger was ever informed by a doctor, or by anyone,

---

[1] At the deposition, the defendant alluded to certain training and to warning decals, but the plaintiff did not recall the training and does not recall seeing the decals. The Court has not been presented with evidence of what knowledge the training would have imparted or whether and when the decals were placed on the locomotives. This case is factually distinguishable from *Hunt v. Union Pac. R.R. Company*, No. 8:18CV55, 2020 WL 58435, at *2-*3 (D. Neb. Jan. 6, 2020), wherein the plaintiff admitted that he was aware of the Proposition 65 stickers placed on locomotives and had been told by co-workers of the danger of silica sand to his health.

10

that there was a connection between his work on the railroad and his development of renal cancer.

The evidence shows that the plaintiff may have suspected at the time of the diagnosis that his work was connected to the cancer because railroad work was the only work he had ever done. He then conducted some investigation—he asked his doctors what caused his cancer and was told the cause was unknown. There is no evidence that a reasonable person, in the face of such a response, would have continued to connect the cancer to exposures at work. Nor has the defendant shown that there was publicly available information, notoriety, news reports, publicity, or knowledge from other sources linking renal cancer to the sort of environmental exposures Greger had so as to prompt further inquiry. Also, there is no evidence that a more diligent search would have resulted in a different outcome.

Nothing in the record indicates that a reasonably diligent person would have done more to discern the cause, or that a more searching inquiry would have provided Greger with knowledge of the connection between the cancer and his exposures. There is no evidence that a timely investigation would have revealed the relationship between Greger's exposures at the Railroad and renal cancer. The doctors' responses arguably laid to rest any suspicion the plaintiff might have had as to the cause of his injury. The record shows Greger made his inquiries of the doctors close to the time of the initial diagnosis in 2010, or at the latest, close to the time of the metastasis of the cancer in 2012. Greger cannot be presumed to have known more than the doctors did at that time about the cause of the cancer.

There is no evidence that Greger acquired any additional information in following years that would trigger a duty to investigate more thoroughly. On this evidence, the Court cannot make a finding as a matter of law that Greger should have known the cause of the cancer was work-related or that he was not reasonably diligent in investigating the cause. There is a genuine issue of material fact on the plaintiff's reasonable diligence that a jury must resolve. Accordingly,

IT IS ORDERED that the defendant's motion for summary judgment (Filing No. 14) is denied.

Dated this 26th day of June, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge